1  NICHOLAS J.P. WAGNER
California State Bar No. 109455
2  THE WAGNER LAW GROUP, PC
1111 E Herndon Ave. Suite 317
3  Fresno, California 93720
Telephone: (559) 449-1800
4  butch@thewagnerlawgroup.com
sonya@thewagnerlawgroup.com
5
*Counsel for Plaintiffs*
6

7  **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
8  **SAN FRANCISCO DIVISION**

9

10  LINDA CHANEY; MARIE
WASHINGTON; and PEARL GARCIA,       CASE NO.
individuals,
11                                         **COMPLAINT**
              Plaintiffs,
                                          • Violation of Eighth Amendment
12       v.                               • Sexual Battery
                                          • Gender Violence
13  UNITED STATES OF AMERICA;             • Civil Conspiracy
FEDERAL BUREAU OF PRISONS;             • Battery
14  FEDERAL CORRECTIONAL                   • Negligence
INSTITUTION-DUBLIN; OFFICER
15  ESPINOSA; OFFICER JONES;
OFFICER KERSHAW; OFFICER               JURY TRIAL DEMANDED
16  O'CONNOR; OFFICER SMITH; and
DOES 1 to 20.
17
              Defendants.
18

19

20

COMPLAINT

Plaintiffs allege:

## THE PARTIES

1.     Plaintiff Linda Chaney is an individual residing in the State of California. During the relevant period, she was in the custody of the Federal Bureau of Prisons in whose care she was incarcerated at Federal Correctional Institution-Dublin in Dublin, California. Plaintiff Chaney is presently out of custody and not incarcerated or detained in any facility.

2.     Plaintiff Marie Washington is an individual residing in Orange Grove, California. During the relevant time period, she was in the custody of the Federal Bureau of Prisons in whose care she was incarcerated at Federal Correctional Institution-Dublin in Dublin, California. Plaintiff Washington is presently out of custody and not incarcerated or detained in any facility.

3.     Plaintiff Pearl Garcia is an individual residing in San Jose, California. During the relevant time period, she was in the custody of the Federal Bureau of Prisons in whose care she was incarcerated at Federal Correctional Institution-Dublin in Dublin, California. Plaintiff Garcia is presently out of custody and not incarcerated or detained in any facility.

4.     Defendant Federal Bureau of Prisons (BOP) is government agency headquartered in Washington D.C under the U.S. Department of Justice. Defendant BOP is responsible for the care, custody, and control of federal prisoners and the operation and management of federal correctional institutions. On information and belief: Defendant BOP knew or should have known of the individual defendants' past histories, proclivities, and propensities for threats, violence, sexual abuse, harassment, retaliation, misuse of authority, and prior violations of BOP policies, procedures, rules, and regulations and Defendant BOP permitted, consented to, and/or ratified their conduct individually and collectively.

5.      Defendant Federal Correctional Institution-Dublin (FCI Dublin) is a low-security facility that houses female inmates and operates under the control of its supervising agency, Defendant BOP. It is located in Dublin, California which is within the federal judicial district for the Northern District of California.

6.      Defendant United States of America (USA) is a government entity. During the relevant period, the United States, by and through its federal agency BOP, held possession of and exercised control over FCI Dublin. The United States has waived sovereign immunity to Plaintiffs' tort claims. 28 U.S.C. §2674; *cf. id.* at §2680(h).

7.      On information and belief: Defendant Officer Espinosa, first name unknown, is an individual who lives and resides in the State of California. During the relevant period, he was employed by BOP and working at FCI Dublin as a law enforcement officer. With respect to the allegations in this complaint, he acted under color of authority while employed as a correctional officer and Defendants USA and BOP permitted, consented to, and/or ratified his conduct. Plaintiffs will amend this complaint to state Defendant Espinosa's full name when ascertained.

8.      On information and belief: Defendant Officer Jones, first name unknown, is an individual who lives and resides in the State of California. During the relevant period, he was employed by BOP and working at FCI Dublin as a law enforcement officer. With respect to the allegations in this complaint, he acted under color of authority while employed as a correctional officer and Defendants USA and BOP permitted, consented to, and/or ratified his conduct. Plaintiffs will amend this complaint to state Defendant Jones's full name when ascertained.

9.      On information and belief: Defendant Officer Kershaw, first name unknown, is an individual who lives and resides in the State of California. During the relevant period, he was employed by BOP and working at FCI Dublin as a law enforcement officer. With respect to the allegations in this complaint, he acted

- 3 -
COMPLAINT

under color of authority while employed as a correctional officer and Defendants USA and BOP permitted, consented to, and/or ratified his conduct. Plaintiffs will amend this complaint to state Defendant Kershaw full name when ascertained.

10.     On information and belief: Defendant Officer O'Connor, first name unknown, is an individual who lives and resides in the State of California. During the relevant period, he was employed by BOP and working at FCI Dublin as a law enforcement officer. With respect to the allegations in this complaint, he acted under color of authority while employed as a correctional officer and Defendants USA and BOP permitted, consented to, and/or ratified his conduct. Plaintiffs will amend this complaint to state Defendant O'Connor's full name when ascertained.

11.     On information and belief: Defendant Officer Smith, first name unknown, is an individual who lives and resides in the State of California. During the relevant period, he was employed by BOP and working at FCI Dublin as a law enforcement officer. With respect to the allegations in this complaint, he acted under color of authority while employed as a correctional officer and Defendants USA and BOP permitted, consented to, and/or ratified his conduct. Plaintiffs will amend this complaint to state Defendant Smith's full name when ascertained.

12.     Plaintiffs are ignorant of the identities of DOES 1 through 20, inclusive, and therefore sue them under fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. On information and belief: DOES 1 through 20, individually and/or collectively, were responsible for the occurrences alleged herein and their acts or omissions were a proximate cause of Plaintiffs' injuries. References in this complaint to the "Defendants" include DOES 1 through 20 unless otherwise stated. While the Federal Code of Civil Procedure does not reference DOE defendants, their use here is appropriate given the extent of the collusion and cover-up of abuse at FCI Dublin

which by its nature acted to conceal the identities of those responsible for misconduct against Plaintiffs. *See* ¶19, *supra*.

13. During the relevant period, Defendants were agents, employees, partners, joint-venturers, conspirators, owners, principles and/or employers of one another, and acted within the course and scope of such relationships. Each defendant's conduct was known, authorized, permitted, and/or ratified by the other defendants, individually and collectively.

## JURISDICTION & VENUE

14. Diversity jurisdiction exists under 28 U.S.C. §1332 because Plaintiffs and Defendants have diversity of citizenship and the amount in controversy exceeds $75,000.

15. Federal question jurisdiction exists under 28 U.S.C. §1331 over Plaintiffs' constitutional claims under the U.S. Constitution and related federal statutes, and their federal tort claims under the Federal Tort Claims Act.

16. Supplemental jurisdiction exists under 28 U.S.C. §1367 over Plaintiffs' state law claims arising from California statutory, common law, and constitutional authority as they are predicated on the same operative facts giving rise to Plaintiffs' federal-question claims.

17. Personal jurisdiction exists because Defendants, as pleaded on information and belief, live and reside in the State of California. Specific jurisdiction exists because Defendants committed the acts and omissions at issue in this case within the State of California.

18. Venue is proper in this judicial district under 28 U.S.C. §§1391(b)(2) and 1402(b) because the conduct giving rise to Plaintiffs' claims occurred at FCI Dublin in Dublin, California. Assignment is proper to the San Francisco Division of the Northern District of California because the conduct giving rise to Plaintiffs' claims occurred at FCI Dublin which is located in Alameda County, California.

COMPLAINT

## GENERAL ALLEGATIONS

19.   **As to FCI Dublin generally:**

a.   FCI Dublin has a well-documented history of sexual abuse, retaliation, conspiracy, and cover-up by prison employees against the female inmates housed there. This culture of abuse stemmed from the very top and pervaded down the ranks to every facet of operations and has been the subject of investigations by reputable media outlets, federal agencies, and at least one congressional sub-committee.

b.   On February 6, 2022, for example, AP News reported: "Inside one of the only federal women's prisons in the United States, inmates say they have been subjected to rampant sexual abuse by correctional officers and even the warden, and were often threatened or punished when they tried to speak up. [¶] Prisoners and workers at the federal correctional institution in Dublin, California, even have a name for it: 'The rape club.' [¶] An Associated Press investigation has found a permissive and toxic culture at the Bay area lockup, enabling years of sexual misconduct by predatory employees and cover-ups that have largely kept the abuse out of the public eye. [¶] The AP obtained internal Bureau of Prisons documents, statements and recordings from inmates, interviewed current and former prison employees and reviewed thousands of pages of court records from criminal and civil cases involving Dublin Prison staff. [¶] Together, they detail how inmates' allegations against members of the mostly male staff were ignored or set aside, how prisoners could be sent to solitary confinement for reporting abuse and how officials in charge of preventing and investigating sexual misconduct were themselves accused of abusing inmates or neglecting their concerns." Michael Balsamo and Michael R. Sisak, *AP investigation: Women's prison fostered culture of abuse*, AP News, February 6, 2022, https://apnews.com/article/prisons-california-united-states-sexual-abuse-only-on-ap-d321ae51fe93dfd9d6e5754383a95801.

c.      On August 31, 2022, the Office of Public Affairs for the Department of Justice issued a press release stating: "James Theodore Highhouse, 50, a former chaplain with the Federal Bureau of Prisons (BOP) was sentenced today in federal court… to 84 months in prison followed by five years of supervised released[sic] for repeatedly sexually abusing an incarcerated female and then lying to federal agents about his misconduct… [¶] Highhouse previously entered a guilty plea to five felonies on Feb. 23, 2022. According to court documents, Highhouse was employed by the BOP as a corrections worker and chaplain starting in 2016 and was assigned to work at [FCI Dublin]…. At times, Highhouse also performed a custodial role, that is, he could handcuff inmates, write up incident reports and refer inmates for disciplinary action. [¶] In imposing sentence, the judge considered the defendant's systemic abuse of the victim as well as the accounts of other women whom the defendant subjected to sexual misconduct. The judge specifically noted the defendant's 'sustained predatory behavior against traumatized and defenseless women in prison.' " U.S. Department of Justice, Office of Public Affairs, *Federal Prison Chaplain Sentenced for Sexual Assault and Lying to Federal Agents*, August 31, 2022, https://www.justice.gov/opa/pr/federal-prison-chaplain-sentenced-sexual-assault-and-lying-federal-agents.

d.      On September 29, 2022, the San Francisco Chronicle reported: "A former guard at the federal women's prison in Dublin was charged Thursday with sexually abusing two more inmates, the latest in a series of sex-abuse charges against officers and a former warden at the Federal Correctional Institution. [¶] John Bellhouse was initially indicted… in February on a charge of abusive sexual contact with a female inmate in 2020 and pleaded not guilty. On Thursday, the grand jury issued a new indictment accusing Bellhouse, 39, of two additional charges of abusing the same woman, between December 2019 and October 2020, and three more charges of touching the thighs and buttocks of two other female

COMPLAINT

prisoners in 2020." Bob Egelko, *Sex abuse charges against former Dublin prison guard are the latest in a string of serious incidents*, September 29, 2022, https://www.sfchronicle.com/bayarea/article/Sex-abuse-charges-against-former-Dublin-prison-17476669.php.

  e. On October 27, 2022, the U.S. Attorney's Office issued a press release that stated: "Enrique Chavez pleaded guilty in federal court today to abusive sexual contact with a female prison inmate while he was employed as a correctional officer at [FCI Dublin] in Alameda County. [¶¶¶] Chavez admitted today in his plea agreement that during October 2020 he met Victim 1 in the food service pantry at FCI Dublin. After they met in the pantry, Chavez locked the door. The lights were turned off. Chavez admitted to putting his hand inside Victim 1's underwear and touching her genitals. Chavez also admitted to touching the victim's breasts. [¶] Chavez pleaded guilty today to one count of abusive sexual contact with a prisoner in violation of 18 U.S.C. § 2244(a)(4)." U.S. Attorney's Office, Northern District of California, *Former Correctional Officer Admits to Abusive Sexual Contact with Inmate*, October 27, 2022, https://oig.justice.gov/sites/default/files/2022-10/10-27-2022.pdf.

  f. Chavez had previously been identified as a correctional officer who "supervised and had disciplinary authority over the female inmates incarcerated at FCI Dublin. Chavez was trained in BOP policies and procedures, which included instructions that sexual, financial and social relationships with inmates are prohibited." U.S. Department of Justice, Office of Public Affairs, *Correctional Officer at FCI Dublin Charged for Abusive Sexual Contact with Female Inmate*, March 23, 2022, https://oig.justice.gov/sites/default/files/2022-04/03-23-2022.pdf.

  g. On December 8, 2022, the Office of Public Affairs for the Department of Justice issued another press release that stated: "A federal jury

convicted former prison warden Ray J. Garcia of seven counts involving sexually abusive conduct against three female victims who were serving prison sentences and one count of making false statements to government agents. [¶] Garcia, 55, of Merced, California, was initially charged with sexual abuse of an inmate on Sept. 24, 2021. A federal grand jury issued a superseding indictment on Aug. 23, 2022, charging Garcia with three counts of sexual abuse and four counts of abusive sexual contact against three female inmates. The criminal acts were alleged to have occurred from December 2019 to July 2021." U.S. Department of Justice, Office of Public Affairs, *Jury Convicts Former Federal Prison Warden for Sexual Abuse of Three Female Inmates*, December 8, 2022, https://www.justice.gov/opa/pr/jury-convicts-former-federal-prison-warden-sexual-abuse-three-female-inmates.

       h.      On December 13, 2022, the Inspector General for the Department of Justice published a copy of his remarks to the U.S. Senate Committee on Homeland Security and Government Affairs, Permanent Subcommittee on Investigations concerning "Sexual Abuse of Female Prisoners in the Custody of the Federal Bureau of Prisons," which stated: "The OIG's oversight authority includes wrongdoing by BOP personnel who are accused of sexually assaulting inmates. There is no clearer reminder of the importance of our work than the testimony we heard from Ms. Delarosa, Ms. Moore, and Ms. Richardson…. Indeed, just last week, a jury in California convicted the former Warden at [FCI Dublin], which prompted my office, working with the FBI and the U.S. Attorney's Office… to conduct a widespread sexual misconduct investigation at the prison." Statement of Michael E. Horowitz, Inspector General, December 12, 2022, at 1, https://oig.justice.gov/sites/default/files/2022-12/12-13-2022.pdf. "[T]he OIG, in partnership with the FBI and the USAO, has an ongoing investigation of alleged widespread sexual assaults between 2018 and 2021 by numerous BOP officials against inmates at FCI Dublin, an all-female prison in California. To date, our

ongoing investigation has resulted in 5 employees at FCI Dublin being charged criminally, including the former warden who just last week was convicted by a jury on 8 separate charges, including multiple counts of sexual abuse, illegal sexual contact with inmates, and lying to investigators." *Id.* at 3.

i.      Also, on December 13, 2022, the Permanent Subcommittee on Investigations for the U.S. Senate released a report in conjunction with its  hearing that day that stated: "FCI Dublin is an all-female facility with two components: a low security federal correctional institution and an adjacent minimum-security satellite camp. There are currently 477 female offenders housed across the prison." U.S. Senate, Permanent Subcommittee on Investigations, Staff Report, December 13, 2022, at 15, footnotes omitted, https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf.[1]

j.      The staff report stated five employees had been indicted "for sexual abuse of at least eight female detainees at FCI Dublin." *Id.* These included (1) Ross Klinger, a former BOP correctional officer and recycling technician who was indicted in June 2021 and subsequently "pleaded guilty to three counts of sexual abuse of a ward." *Id.* at 15-16. (2) Ray J. Garcia, the former warden, who was charged with having "knowingly had sexual contact with at least one female prisoner, asked at least two inmates to strip naked for him during rounds and took photos, and stored a 'large volume of sexually graphic photographs' on his BOP issued cellphone. In the two years prior to his arrest, Garcia was the PREA compliance officer at FCI Dublin, responsible for ensuring that the facility was

---

[1]      Due to their voluminous nature, footnotes are omitted from the quoted portions of the Subcommittee's staff report dated December 13, 2022. Future references to the staff report should be understood to have footnotes omitted.

COMPLAINT

adhering to PREA policies and training other employees, including new supervisors." *Id.* at 16. (3) John Bellhouse, a correctional officer and safety administrator, who was charged with sexual abuse of a prison ward after "a prisoner identified that Bellhouse and another BOP employee were engaging in sexual interactions with several prisoners, and also providing prisoners with contraband, money and personal cellphone use." *Id.* (4) James Highhouse, a former chaplain, who pleaded guilty after being charged with sexual abuse of a ward, abusive sexual contact, and making false statements to investigators." *Id.* And finally (5), "Enrique Chaves, a food service foreman... was indicted on two counts of abusive sexual contact with a prison inmate." *Id.* The staff report further stated: "As of May 2022, OIG and/or BOP were investigating at least 17 additional current or former employees at FCI Dublin for sexual misconduct." *Id.*

k.   In all, the Subcommittee identified at least 19 female prisoners who were sexually abused by BOP employees at FCI Dublin from 2012 to 2022. This list was determined by tallying cases where a male BOP employee pleaded guilty or was convicted of sexually abusing a female prisoner and cases where BOP OIA substantiated allegations of sexual abuse by male BOP employees. *Id.* at Exhibit 1 at 1-2.

l.   Most recently, on April 6, 2023, The Guardian reported on a particular case for an inmate named Cristal who was pursuing a case against BOP: "When Cristal arrived at FCI Dublin in September 2019, guards put her to work as a cook. She was grateful for the job... But almost immediately, an officer overseeing the kitchen began harassing her, she said, pressuring her to go to the backroom where there were no cameras; threatening to expose himself; rubbing and grabbing her from behind; demanding she 'bend over'; and calling her demeaning names when she refused." Sam Levin, *She reported being abused by US prison guards. Now she faces deportation*, The Guardian, April 6, 2023,

- 11 -

COMPLAINT

https://www.theguardian.com/us-news/2023/apr/06/federal-prison-sexual-abuse-deportation-california-mexico. "Cristal's nightmare is not an anomaly, but a common experience across the Federal Correctional Institution (FCI), east of San Francisco. Indictments against five officers show that guards systemically victimized women in their custody, intimidated them into silence, [and] lied to cover up crimes." *Id.*

20. **As to the Prison Rape Elimination Act (PREA):**

a. The Prison Rape Elimination Act Standards are codified in 28 C.F.R. §115.5 *et seq.* and set forth extensive requirements for BOP with respect to the prevention, detection, and response to "all forms of sexual abuse and sexual harassment." 28 C.F.R. §115.11(b), (c).

b. Sexual assault is defined as "Any… intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties…" or "Any attempt, threat, or request to engage in [such activity]" 28 C.F.R. §115.6. Sexual harassment is defined as repeated gestures of a sexual nature to an inmate by a staff member including obscene language or gestures. *Id.*

c. PREA's requirements include mandatory reporting duties for all staff to immediately report "any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation." *Id.* at §115.61(a). "The facility shall report all allegations of sexual abuse and sexual harassment, including third-party and anonymous reports, to the facility's designated investigators." *Id.* at §115.61(e).

d. PREA's requirements also include mandatory protection duties. "When an agency learns that an inmate is subject to a substantial risk of imminent

sexual abuse, it shall take immediate action to protect the inmate." *Id.* at §115.62. In addition to acting to ensure an inmate's physical safety, BOP is required to affirmatively protect from retaliation "all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff" and "shall employ multiple protection measures" to do so. *Id.* at §115.67(a), (b).

e.      Transfer to the Special Housing Unit is not an appropriate measure to protect an inmate from sexual assault, sexual harassment, or retaliation unless no other methods are available to ensure their safety. "Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and a determination has been made that there is no available alternative means of separation from likely abusers." *Id.* at §115.43(a).

f.      "PREA 'is intended to make confinement facilities free from sexual abuse and its threat.' When Congress passed PREA in 2003, it established a National Prison Rape Elimination Commission (the 'NPRE Commission') to 'carry out a comprehensive legal and factual study of the penological, physical, mental, medical, social, and economic impacts of prison rape' and to issue a report with 'recommended national standards for reducing prison rape[.]' The recommendations, adopted by DOJ and binding on BOP, require periodic PREA audits of all federal correctional facilities to ensure compliance with the standards put forth in the regulations. According to DOJ, PREA auditors 'are responsible for conducting high quality, reliable, objective, and comprehensive audits that hold agencies and facilities accountable for keeping individuals in their custody and care safe from sexual abuse and sexual harassment.' " U.S. Senate, Permanent Subcommittee on Investigations, Staff Report, *supra*, at 19.

g.     "PREA audits assess whether an institution is compliant with the 45 PREA standards by reviewing policies and practices within the institution, interviewing employees and prisoners, and reviewing documentation from the audit period, such as prisoner complaints of sexual abuse or harassment." *Id.* at 19-20.

h.     The Permanent Subcommittee on Investigations reviewed the PREA audits of "FCI Dublin—where there were, per BOP OIA Chief Reese, 'cultural issues' concerning sexual misconduct by employees—to evaluate whether the audits detected that there was a sexual abuse problem. In other words, did the PREA audits predating and during the period of multiple BOP employees abusing multiple women find that the prison was not compliant with some or all of the PREA standards? Did the audits covering the periods of significant sexual abuse detect the cultural issues at that prison? [¶] The Subcommittee found that BOP failed to accomplish either outcome with its PREA audits." *Id.* These audits all "came back clean" and found that FCI Dublin was "compliant with all PREA standards before, during, and after the multiple, documented instances of sexual abuse." *Id.* at 20.

i.     As to the 45 PREA standards: The 2014 audit report found that FCI Dublin had met or exceeded 42 standards and that one standard was not applicable; it is unclear what two standards were not included in the results. The 2017 audit found that FCI Dublin had met 42 standards and that two standards were not applicable; it is unclear which standard was not included in the results. The 2022 audit found that FCI Dublin had met all 45 PREA standards. *Id.* at 21.

j.     Upon consideration of written documentation and testimonial evidence regarding PREA compliance, the Subcommittee concluded: "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities [including FCI Dublin] to go undetected. BOP's internal affairs practices have

failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms." *Id.* at 30.

k.     Throughout the relevant time period, Defendants continually violated PREA Standards and acted in concert to conceal their misconduct.

21.     **As to Plaintiff Linda Chaney:**

a.     Plaintiff Chaney suffered sex-based harassment, abuse, retaliation, and discrimination during her incarceration at FCI Dublin beginning on September 7, 2019 through her release on or about January 2022. On information and belief, she knew the facts stated in ¶¶19 and 20 before, during, and/or after the harms she suffered as described in this paragraph.

b.     While incarcerated, Plaintiff Chaney worked in the food services department. When she was placed there, she was told that "everyone minds their own business here" and that she was expected to keep watch for the officers/foremen/BOP employees stationed there. This basically entailed turning a blind eye while male BOP employees took female inmates to the refrigerators in the back and warning them if other staff were approaching the area. Plaintiff Chaney saw several instances where male BOP employees took female inmates into the back and the lights were turned off. Plaintiff Chaney was warned that her spot in the food services department was dependent on her "keeping an eye out" and if she didn't, then she would lose her job.

c.     Defendant Officer O'Connor, a male BOP employee assigned to the food services department, repeatedly assaulted Plaintiff Chaney when she went to return utensils to their correct location. Defendant O'Connor would "rub his dick" up against Plaintiff Chaney's butt. The first time this happened, she said, "What are you doing?" and Defendant O'Connor said, "Oh, my bad!" The behavior didn't stop, however, and Defendant O'Connor continued to rub himself against

Plaintiff Chaney. She was scared to report the assaults because she did not want to be sent to the Special Housing Unit (SHU), which would have been the retaliation if she had reported his conduct. Plaintiff Chaney knew other women who reported abuse had been retaliated against by being sent to the SHU, among other punishments.

d.     Defendant Officer Jones, another male employee assigned to food services, would verbally abuse the inmates and was reported for his behavior by at least two inmates—last names Wilson and McDonald. Defendant Jones took Plaintiff Chaney aside and made her repeat that she was "on his side" because Wilson and McDonald had reported him. Plaintiff Chaney told him "yes" because she was intimidated and feared what Defendant Jones would do if she said no and reported his behavior. Defendant Jones had 'special relationships' (i.e., sexual relationships) with multiple female inmates.

e.     The women who had sexual relationships with BOP employees received preferential treatment. Those who objected to, rejected, or complained of sexual attention were subjected to worse treatment.

f.     Plaintiff Chaney and her roommate, Plaintiff Marie Washington, were harassed by Defendant Officer Smith who worked as a guard in their housing unit. He would come to their room, say he on duty that night, and tell them 'they'd better be naked' when he did his rounds so he could watch and look at them. Defendant Smith threatened them by, among other things, repeating that he had "friends in high places" and was "important" to force their compliance with his sexual demands. He would walk into their room and demand they have sex with each other. Defendant Smith's conduct was unwanted and persistent, and threatened Plaintiff Chaney to 'get naked or else.' Plaintiff Chaney was afraid to speak up because Defendant Smith told her and her roommate, Plaintiff Washington, that he would kill anyone who told on him.

COMPLAINT

g. Defendants failed to act on reports by inmates Wilson and McDonald complaining of Defendant Jones's behavior, which led Plaintiff Chaney to reasonably believe that any report she made would not be properly responded to. In addition, she had seen women complain of sexual misconduct by BOP employees who were then subjected to retaliation by, for example, being sent to the Special Housing Unit as a punitive retaliatory measure.

h. The culture of retaliation, collusion, cover-up, and abuse at FCI Dublin was so pervasive and overwhelming that Plaintiff Chaney reasonably believed it was safer to remain quiet than report the abuse she suffered, because the women who had reported misconduct were subjected to retaliatory abuse, harassment, selective enforcement of rules, and punitive imposition of unfair, unjust, and unwarranted punishments including being sent to the Special Housing Unit without due cause.

i. On information and belief: Defendants received numerous reports of misconduct and complaints of sexual harassment and abuse made by female inmates against the defendants, including Defendants Jones, O'Conner, and Smith, yet failed to act on those complaints. Defendants knew or should have known of their misconduct but failed to properly investigate, impose discipline, and implement safeguards to ensure the women at FCI Dublin like Plaintiff Chaney were protected. Had Defendants properly investigated, intervened, and imposed discipline, and taken other corrective actions as it was legally required to do in response to the complaints, Plaintiff Chaney would not have been harmed.

j. Plaintiff Chaney suffered statutory, common law, and constitutional rights violations caused by Defendants' actions and failures to act. Defendants had a duty to keep Chaney safe during her period of incarceration and failed to do so. Defendants knew, or should have known, about the abuse she was subjected to and failed to intervene and protect her from the conduct of the other

defendants. Defendants' had a non-delegable duty to act in her best interest given her status as an inmate under the other defendants' complete control.

      k.     The conduct described in this paragraph occurred from Plaintiff Chaney's admission into FCI Dublin through the date of her release as described, and harmed her by causing her physical injury and to suffer emotional distress and pain and suffering including but not limited to anxiety, fear, sleeplessness, anger, and intrusive/invasive thoughts on a daily basis.

      l.     Plaintiff Chaney complied with the Federal Tort Claims Act (FTCA) by submitting a completed claim form to BOP that included the information required by statute and within the time period prescribed by law. Plaintiff Chaney has further satisfied her obligations under the FTCA by filing this complaint within the time limits prescribed by law. A true and correct copy of Plaintiff Chaney's tort claim is attached as Exhibit A.

22.   **As to Plaintiff Marie Washington:**

      a.     Plaintiff Washington suffered continued sexual harassment during her two years of incarceration at FCI Dublin, first while she was in the Covid ward for six weeks to quarantine and then throughout the rest of her time in the regular housing unit. The sexual harassment was committed by several guards. On information and belief, she knew the facts stated in ¶¶19 and 20 before, during, and/or after the harms she suffered as described in this paragraph.

      b.     Upon admission to FCI Dublin in September 2020, Plaintiff Washington was put in the Covid ward for quarantine where she stayed for approximately six weeks during which time she was only allowed out of her cell once every 72-hours to shower. While in the Covid ward, Defendant Officer Kershaw targeted Plaintiff Washington by asking to see her vagina; shining his flashlight through her room window to see her naked; coming to her door while she was dressing; and telling her to "do stuff" (i.e., sexual activities) with her cell mate

so he could watch. Plaintiff Washington's cellmate at the time was a woman named Fabiola (last name unknown). Plaintiff Washington and Fabiola were new arrivals at FCI Dublin who were scared and afraid. They had no choice but to comply with Defendant Kershaw's demands because he threatened them and they were not allowed to leave the cell, so they had no access to anyone who might help them. As a consequence of his threats and his position as a law enforcement officer acting under color of authority, Plaintiff Washington was forced to have sex with her roommate while Defendant Kershaw watched. He told Plaintiff Washington that if he entered her cell, he would "fuck the shit out of [her]." Defendant Kershaw's conduct was unwanted, persistent, threatening, and done with threat of physical force and/or retaliation.

c.     After six weeks in the Covid ward, Plaintiff Washington was transferred to a regular housing unit. While there, she and her roommate, Plaintiff Linda Chaney, were threatened and sexually harassed by Defendant Officer Smith. He would come to their room, say he on duty that night, and tell them 'they'd better be naked' when he did his rounds so he could watch and look at them. Defendant Smith threatened them by, among other things, repeating that he had "friends in high places" and was "important" to force their compliance with his sexual demands. He would walk into their room and demand they have sex with each other. Defendant Smith's conduct was unwanted and persistent, and threatened Plaintiff Washington to 'get naked or else.' Plaintiff Washington was afraid to speak up because Defendant Smith told her and her roommate, Plaintiff Chaney, that he would kill anyone who told on him.

d.     While in the regular housing unit, Plaintiff Washington was targeted by a third guard, Defendant Officer Espinosa. In December 2021 or early January 2022, Defendant Espinosa intentionally opened Plaintiff Washington's door just after she had taken a shower to see her naked body. He stared at her for "a while" before finally leaving. Plaintiff Washington smelled alcohol on his breath.

- 19 -

COMPLAINT

She was afraid he would hurt her or touch her. Defendant Espinosa knew she was naked before he opened her door because her window was covered with a "wickie," which is a privacy screen that inmates use to cover their windows while getting dressed, using the bathroom, and showering.

e.     On the day that Defendant Espinosa invaded her privacy and subjected her to sexual harassment, Plaintiff Washington had put up the "wickie" so she could change after showering with the expectation that she could do so in private, away from guards, and in peace and quiet.

f.     Defendants Smith and Espinosa further targeted Plaintiff Washington by disrupting her sleep when they worked night shifts. Normally, night guards check on inmates once or twice an hour by briefly shining their flashlights through inmate room windows to make sure everything is okay. Defendants Smith and Espinosa, however, shone their flashlights in Plaintiff Washington's window anywhere from six to twelve times per hour for extended periods of time while they were working the night shift. The duration and frequency of their flashlight-checks prevented Plaintiff Washington from sleeping. This conduct was extremely disruptive to Plaintiff Washington's sleep, and was also an intentional continuation of the harassment she received from these guards during daylight.

g.     Plaintiff Washington suffered statutory, common law, and constitutional rights violations caused by Defendants' actions and failures to act. Defendants had a duty to keep her safe during the period of her incarceration and failed to do so. Defendants knew, or should have known, about the abuse she was subjected to and failed to intervene and protect her from the conduct of the other defendants. Defendants had a non-delegable duty to act in her best interest given her status as an inmate under the other defendants' complete control.

h.     On information and belief: Defendants received numerous reports of misconduct and complaints of sexual harassment and abuse made against the other defendants, including Defendants Jones, Kershaw, and Smith, yet each

defendant failed to act on them. Defendants knew or should have known of their misconduct but failed to properly investigate, impose discipline, and implement safeguards to ensure the women at FCI Dublin like Plaintiff Washington were protected. Had Defendants properly investigated, intervened, and imposed discipline, and taken other corrective actions as it was legally required to do in response to the complaints, she would not have been harmed.

i.      The conduct described in this paragraph injured Plaintiff Washington by causing her to suffer physical injury and emotional distress and pain and suffering. Her symptoms include but are not limited to anxiety, fear, sleeplessness, anger, and intrusive/invasive thoughts on a daily basis. Plaintiff Washington was molested by her stepfather for years when she was a child, and the sexual harassment she suffered at DCI Dublin exacerbated that trauma.

j.      Plaintiff Washington complied with the Federal Tort Claims Act by submitting a completed claim form to BOP that included the information required by statute and within the time period prescribed by law. Plaintiff Washington has further satisfied her obligations under the FTCA by filing this complaint within the time limits prescribed by law. A true and correct copy of Plaintiff Washington's tort claim is attached as Exhibit B.

23.    **As to Plaintiff Pearl Garcia:**

a.      Plaintiff Garcia was incarcerated at FCI Dublin from October 2019 through January 12, 2022. Prior to being placed in FCI Dublin, she served six months in the minimum-security camp, situated on the same site as FCI Dublin, from about April to September 2019. On information and belief, she knew the facts stated in ¶¶19 and 20 before, during, and/or after the harms she suffered as described in this paragraph.

b.      When Plaintiff Garcia was at FCI Dublin, she was continually harassed, assaulted, threatened, and targeted by a correctional officer in her housing

unit. This included repeated inappropriate, offensive, and unwanted comments, gestures, and physical contact. On information and belief, this misconduct was committed by Defendant Officer Smith.

c.      About her breasts, the officer told her: "Those are huge, I'd like to handle those"; "You going to show me those things?"; "I would love to fuck you in those big titties"; and "I want to see those boobs." At night, the officer entered her room, woke her up, and shook her legs to get her attention while demanding, "Are you going to show me yet?" She was physically assaulted by having her breasts touched and exposed, threatened to have her room "torn up" if she told anyone; and warned her to keep her mouth shut because "No one will believe you." The officer, believed to be Defendant Smith, did all of these things.

d.      For example, one night, the officer entered her room. His shirt was unbuttoned, his body was uncovered, and his chest was showing. He shook her leg to wake her up. Plaintiff Garcia jumped up out of bed and said, "What are you doing? Get out of here!" She tried to leave but he blocked the door with his hands and said, "You're going to show me those titties right now. Who is going to know? No one is going to believe you." Then he threw her against the door and said, "You're going to show me or I'm going to see them either way." He pulled up her shirt and bra, exposing her chest. He said, "Damn, these things are nice." He touched her breasts, grabbing one of them, rubbing it, and trying to suck on them. Plaintiff Garcia slapped him. He threw her aside and left the room.

e.      The officer had come into her room at night before this but started coming into her room more frequently afterwards. On another occasion, he came into her room at night and unbuttoned his pants. Plaintiff Garcia jumped out of bed, terrified, but the officer stood with his back to the door—with his pants undone and his penis exposed—so she couldn't leave. He intentionally blocked the exit. She told him to leave; he shook his head and said, "No one has to know about

COMPLAINT

this. No one will know." Then he grabbed her, turned her around, pushed her against the door, and started sliding his penis between her legs. Plaintiff Garcia cried out and begged him to stop. He eventually left.

f.    Plaintiff Garcia suffered statutory, common law, and constitutional rights violations caused by Defendants' actions and failures to act. Defendants had a duty to keep her safe during the period of her incarceration and failed to do so. Defendants knew, or should have known, about the abuse she was subjected to and failed to intervene and protect her from the conduct of FCI Dublin's prison guards. Defendants had a non-delegable duty to act in her best interest given her status as an inmate under Defendants' complete control. On information and belief, Defendants had received numerous complaints of misconduct including sexual assault and harassment committed by the other defendants, including Defendant Smith, prior to the assaults on Plaintiff Garcia but failed to act on those complaints.

g.    The conduct described in this paragraph injured Plaintiff Garcia by causing her to suffer physical harm and emotional distress and pain and suffering. She has suffered from symptoms including but not limited to anxiety, fear, sleeplessness, anger, and intrusive/invasive thoughts on a daily basis.

h.    Plaintiff Garcia complied with the Federal Tort Claims Act by submitting a completed claim form to BOP that included the information required by statute and within the time period prescribed by law. Plaintiff Garcia satisfied the FTCA by filing this complaint within the time limits prescribed by law. A true and correct copy of Plaintiff Garcia's tort claim is attached as Exhibit C.

//
//
//

## FIRST CAUSE OF ACTION

VIOLATION OF EIGHTH AMENDMENT

24.     Paragraphs 1 through 23 are incorporated by reference into each paragraph in this cause of action.

25.     Plaintiffs allege cruel and unusual punishment under the Eighth Amendment to the Constitution of the United States of America and the FTCA.

26.     "The Eighth Amendment prohibits cruel and unusual punishment in penal institutions." *Wood v. Beauclair*, 692 F.3d 1041, 1045-1046 (9th Cir. 2012). "The requirements for proving an actionable violation of the Eighth Amendment are well established. First, an inmate must demonstrate that the deprivation suffered was objectively, sufficiently serious. Then, the inmate must establish that prison officials had a sufficiently culpable state of mind in allowing the deprivation to take place. The latter requirement has been defined as being deliberately indifferent to an inmate's health or safety." *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (cleaned up).

27.     "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." *Wood*, *supra.* at 1046. In the Ninth Circuit, forcible sexual contact satisfies these requirements when "a prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner. *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020). "[C]ourts must presume malicious and sadistic intent where there is no legitimate penological purpose for a prison official's conduct." *Anderson v. Ferguson* (N.D. Cal., Mar. 14, 2022, 20-cv-04368-HSG) at *15 (citing *Wood*, *supra*, 692 F.3d 1041 at 1050).

28.    Sleep deprivation can constitute a violation of the Eighth Amendment when, under the totality of circumstances, it serves no legitimate penological purpose and is done with deliberate indifference for the inmate's health or safety. *See Chappell v. Mandeville*, 706 F.3d 1052, 1070 (9th Cir. 2013). "[C]onditions having the mutually reinforcing effect of depriving a prisoner of a single basic need, such as sleep, may violate the Eighth Amendment." *Id.*

29.    A prison official violates the Eighth Amendment under the deliberate indifference standard by ignoring risks of serious harm to an inmate's health or safety. Under the deliberate indifference standard, the harm must be objectively serious (*i.e.,* the inmate is incarcerated under conditions posing a substantial risk of serious harm) and the official must be subjectively indifferent to the risk of harm (*i.e.,* the prison official must be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and must also draw the inference). The prison official need not believe harm will occur; it is enough to fail to act despite knowledge of substantial risk of serious harm. Knowledge can be inferred from the circumstances and can be found when the risk was obvious. *Schrubb v. Simmons* (N.D. Cal., Aug. 29, 2022, 12-cv-00418-JSW) at *9 (applying *Farmer v. Brennan*, 511 U.S. 825 (1994).)

30.    **Plaintiff Chaney alleges violations of her Eighth Amendment rights as follows:**

a.    **Against Defendant O'Connor in his individual capacity for physically assaulting her as pleaded in ¶21(c), including based on him repeatedly "rubbing his dick" on her, without consent and against her will, as well as on his failure to prevent serious harm to her health and safety.**

i.    At all relevant times, Defendant O'Connor was a federal employee of Defendants BOP and USA working at FCI Dublin and acting under color of authority with respect to the allegations in this complaint. Defendant

O'Connor was a correctional officer responsible for the safekeeping and protection of Plaintiff Chaney who was an inmate under his care.

ii.     Defendant O'Connor violated Plaintiff Chaney's rights to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as an inmate at FCI Dublin.

iii.     The sexual abuse occurred under inherently coercive circumstances; there were no legitimate penological purposes for this conduct and Defendant O'Connor did so for sexual gratification and/or to humiliate, degrade, and/or demean Plaintiff Chaney.

iv.     By intentionally subjecting Plaintiff Chaney to sexual acts, Defendant O'Connor acted maliciously, in a manner deeply offensive to human dignity, and void of any penological justification. Defendant O'Connor's actions fell so far below the acceptable standard of custodial conduct that he could not have been making a policy judgment in his decision to sexually assault her.

v.     By repeatedly subjecting Plaintiff Chaney to sexual acts, Defendant O'Connor caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity. Defendant O'Connor acted with malice and oppression, and his conduct constituted a reckless or callous disregard of Plaintiff Chaney's rights, entitling her to punitive damages.

vi.     The inhumane conditions of confinement caused by Defendant O'Connor's repeated sexual abuse caused Plaintiff Chaney physical, mental, and emotional harm. She was harmed by this conduct as stated in ¶21(k). She complied with the FTCA as stated in ¶21(l).

b.     **Against Defendant Smith in his individual capacity for forcing her to engage in nonconsensual sexual activity with her roommate under pain of death as pleaded in ¶21(f).**

i.      At all relevant times, Defendant Smith was a federal employee of Defendants BOP and USA working at FCI Dublin and acting under color of authority with respect to the allegations in this complaint. Defendant Smith was a correctional officer responsible for the safekeeping and protection of Plaintiff Garcia who was an inmate under his care.

ii.      There was no legitimate penological purpose for this conduct and he did so for sexual gratification and/or to humiliate, degrade, or demean her. His conduct was rape by coercion.

iii.      By intentionally subjecting Plaintiff to sexual acts, Defendant acted maliciously, in a manner deeply offensive to human dignity, and void of any penological justification. Defendant's actions fell so far below the acceptable standard of custodial conduct that he could not have been making a policy judgment in his decision to sexually assault her.

iv.      By repeatedly subjecting Plaintiff to sexual acts, Defendant caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity. Defendant acted with malice and oppression, and his conduct constituted a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

v.      The inhumane conditions of confinement caused by Defendant Smith's repeated sexual abuse caused Plaintiff Chaney physical, mental, and emotional harm. She was harmed as stated in ¶21(k). Plaintiff complied with the FTCA as stated in ¶21(l).

31.   **Plaintiff Washington alleges violations of her Eighth Amendment rights as follows:**

a.   **Against Defendant Kershaw in his individual capacity for forcing her to have sex with her roommate as pleaded in ¶22(b) and for failing**

**to protect her from a substantial risk of serious harm from sexual abuse by acting in conscious disregard of that known risk.**

i.      At all relevant times, Defendant Kershaw was a federal employee of Defendants BOP and USA working at FCI Dublin and acting under color of authority with respect to the allegations in this complaint. Defendant Kershaw was a correctional officer responsible for the safekeeping and protection of Plaintiff Washington who was an inmate under his care.

ii.      Defendant Kershaw violated Plaintiff Washington's rights to be free from cruel and unusual punishment by repeatedly sexually abusing her and failing to protect her from sexual abuse while she was incarcerated as an inmate at FCI Dublin.

iii.      The sexual abuse occurred under inherently coercive circumstances; there were no legitimate penological purposes for this conduct and Defendant Kershaw did so for sexual gratification and/or to humiliate, degrade, and/or demean Plaintiff Washington.

iv.      By intentionally subjecting Plaintiff Washington to sexual acts, Defendant Kershaw acted maliciously, in a manner deeply offensive to human dignity, and void of any penological justification. Defendant Kershaw's actions fell so far below the acceptable standard of custodial conduct that he could not have been making a policy judgment in his decision to sexually assault her.

v.      By repeatedly subjecting Plaintiff Washington to sexual acts, Defendant Kershaw caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity. She was harmed as stated in ¶22(i). Defendant Kershaw acted with malice and oppression, and his conduct constituted a reckless or callous disregard of Plaintiff 's rights, entitling her to punitive damages. She complied with the FTCA as stated in ¶22(j).

b.    **Against Defendant Smith in his individual capacity for consistently, deliberately, and maliciously depriving her of sleep when he worked the night shift as pleaded in ¶22(f).**

i.       At all relevant times, Defendant Smith was a federal employee of Defendants BOP and USA working at FCI Dublin and acting under color of authority with respect to the allegations in this complaint. Defendant Smith was a correctional officer responsible for the safekeeping and protection of Plaintiff Washington who was an inmate under his care.

ii.      By intentionally subjecting Plaintiff to sleep deprivation, Defendant acted maliciously, in a manner deeply offensive to human dignity and dangerous to Plaintiff's health, and void of any penological justification. Defendant's actions fell so far below the acceptable standard of custodial conduct that he could not have been making a policy judgment in his decision to deprive her of sleep.

iii.     By repeatedly subjecting Plaintiff to this conduct, Defendant caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity. She was harmed as stated in ¶22(i). She complied with the FTCA as stated in ¶22(j).

iv.     Defendant acted with malice and oppression, and his conduct constituted a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

c.    **Against Defendant Espinosa in his individual capacity for consistently, deliberately, and maliciously depriving her of sleep whenever he worked the night shift as pleaded in ¶22(f).**

i.       At all relevant times, Defendant Espinosa was a federal employee of Defendants BOP and USA working at FCI Dublin and acting under color of authority with respect to the allegations in this complaint. Defendant

COMPLAINT

Espinosa was a correctional officer responsible for the safekeeping and protection of Plaintiff Washington who was an inmate under his care.

ii.     By intentionally subjecting Plaintiff to sleep deprivation, Defendant acted maliciously, in a manner deeply offensive to human dignity, dangerous to her health, and void of any penological justification. Defendant's actions fell so far below the acceptable standard of custodial conduct that he could not have been making a policy judgment in his decision to deprive her of sleep.

iii.     By repeatedly subjecting Plaintiff to this conduct, Defendant caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity. She was harmed by this conduct as stated in ¶22(i). She complied with the FTCA as stated in ¶22(j).

iv.     Defendant acted with malice and oppression, and his conduct constituted a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

32.     **Plaintiff Garcia alleges violations of her Eighth Amendment rights as follows:**

a.     **Against Defendant Smith in his individual capacity for repeatedly and forcibly touching, fondling, and exposing her body and breasts as pleaded in ¶23(c); throwing her against the door, pulling up her shirt and bra, groping, and trying to suck on her breasts as pleaded in ¶23(d); and by sliding his bare penis between her legs as pleaded for him to stop in ¶23(e); additionally, for his failure to protect her from serious risk of harm.**

i.     At all relevant times, Defendant Smith was a federal employee of BOP working at FCI Dublin and acting under color of authority with respect to the allegations in this complaint. Defendant Smith was a correctional officer responsible for the safekeeping and protection of Plaintiff Garcia who was an inmate under his care.

ii.      Defendant Smith violated Plaintiff Garcia's rights to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as an inmate at FCI Dublin.

iii.     The sexual abuse occurred under inherently coercive circumstances; there were no legitimate penological purposes for this conduct; and Defendant Smith did so for sexual gratification and/or to humiliate, degrade, and/or demean Plaintiff Garcia.

iv.      By intentionally subjecting Plaintiff to sexual acts, Defendant acted maliciously, in a manner deeply offensive to human dignity, and void of any penological justification. Defendant's actions fell so far below the acceptable standard of custodial conduct that he could not have been making a policy judgment in his decision to sexually assault her.

v.       By repeatedly subjecting Plaintiff to sexual acts, Defendant caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity. Defendant acted with malice and oppression, and his conduct constituted a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

vi.      The inhumane conditions of confinement caused by Officer Smith's repeated sexual abuse caused Plaintiff severe physical, mental, and emotional harm. She was harmed by this conduct as stated in ¶23(g). She satisfied the FTCA as stated in ¶23(h).

33.      As pleaded in ¶¶1-23, the defendants, including Defendants O'Connor, Smith, Kershaw, and Espinosa, acted with deliberate indifference and/or malice and oppression and reckless or callous disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages. *See Smith v. Wade*, 461 U.S. 30 (1983).

34.     Plaintiffs seek actual damages, compensatory damages, punitive damages, attorney fees and costs, as well as any other remedies provided by law including penalties, interest, and equitable relief as the court deems just.

## SECOND CAUSE OF ACTION

SEXUAL BATTERY

35.     Paragraphs 1 through 23 are incorporated by reference into each paragraph in this cause of action.

36.     Plaintiffs allege sexual battery under California common law, California Civil Code §1708.5, and the FTCA.

37.     Under California law, a civil cause of action for sexual battery will lie when, *inter alia*, a defendant acts with the intent to cause harmful or offensive contact with a plaintiff using an "intimate part" of either's body, and such contact directly or indirectly results. Cal. Civ. Code §1708.5(a)(1)-(2). Intimate part means "the sexual organ, anus, groin, or buttocks of any person, or the breast of a female; offensive contact means "contact that offends a reasonable sense of personal dignity." *Id.* at (d)(1)-(2). "A person who commits a sexual battery upon another is liable to that person for damages, including, but not limited to, general damages, special damages, and punitive damages." *Id.* at (b).

38.     An employer is liable for an employee's sexual battery committed while working—including liability for punitive damages—if the employer ratifies the employee's misconduct. *Andrade v. Arby's Rest. Grp., Inc.*, 225 F.Supp.3d 1115, 1130 (N.D. Cal. 2016). The theory of ratification generally applies when an employer fails to investigate or respond to charges that an employee committed an intentional tort, and this establishes independent employer misconduct which is actionable separate and apart from the employee's liability. " 'If the employer, after knowledge of or opportunity to learn of the agents misconduct, continues the wrongdoer in service, the employer may become an abettor and may make himself

- 32 -

COMPLAINT

liable in punitive damages.' " *Id.* (citing *Murillo v. Rite Stuff Foods, Inc.*, 65 Cal.App.4th 833, 852 (1998).)

39.   **Plaintiff Chaney alleges sexual battery as follows:**

a.   Against Defendant O'Connor in his individual capacity for intentionally causing harmful and offensive contact by forcibly "rubbing his dick" on her as pleaded in ¶21(c).

b.   Against Defendant Smith in his individual capacity for intentionally causing harmful and offensive contact by forcing her to have sex with her roommate while he watched as pleaded in ¶21(f).

c.   Against Defendants USA, BOP, and DOES 1 through 20 based on respondeat superior for creating, allowing, and/or knowingly permitting a culture of abuse as pleaded in ¶¶19 and 20, and under the theory of ratification for ratifying O'Connor and Smith's misconduct at work by failing to act on complaints made against them for sexual harassment and assault as pleaded in ¶¶21, 22, and 23. These defendants have waived sovereign immunity under the FTCA for this cause of action because it is based on assault/battery. 28 U.S.C. §2680(h).

40.   **Plaintiff Washington alleges sexual battery as follows:**

a.   Against Defendant Kershaw in his individual capacity for intentionally causing harmful and offensive contact by forcing her to have sex with her roommate while he watched as pleaded in ¶22(b).

b.   Against Defendant Smith in his individual capacity for intentionally causing harmful and offensive contact by forcing her to have sex with her roommate while he watched as pleaded in ¶22(c).

c.   Against Defendants USA, BOP, and DOES 1 through 20 based on the doctrine of respondeat superior for creating, allowing, and/or knowingly permitting a culture of abuse as pleaded in ¶¶19 and 20, and under the theory of ratification for ratifying Defendant Kershaw and Smith's misconduct at work by

failing to act on complaints made against them for sexual harassment and assault as pleaded in ¶¶21, 22, and 23. Defendants have waived sovereign immunity under the FTCA because this claim is based on assault/battery. 28 U.S.C. §2680(h).

41. **Plaintiff Garcia alleges sexual battery as follows:**

a. Against Defendant Smith in his individual capacity for intentionally causing harmful and offensive contact by repeatedly and forcibly touching, fondling, and exposing her body and breasts as pleaded in ¶23(c); throwing her against the door, pulling up her shirt and bra, groping, and trying to suck on her breasts as pleaded in ¶23(d); and by sliding his bare penis between her legs as pleaded in ¶23(e).

b. Against Defendants USA, BOP, and DOES 1 through 20 based on the doctrine of respondeat superior for creating, allowing, and/or knowingly permitting a culture of abuse as pleaded in ¶¶19 and 20, and under the theory of ratification for ratifying Smith's misconduct at work by failing to act on complaints against him for sexual harassment and abuse as pleaded in ¶¶21, 22, and 23. These defendants have waived sovereign immunity under the FTCA for this cause of action because it is based on assault/battery. 28 U.S.C. §2680(h).

42. Defendants acted with malice and oppression and reckless or callous disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages, as supported by the specific factual allegations in ¶1-23.

43. Plaintiffs seek actual damages, compensatory damages, punitive damages, attorney fees and costs, as well as any other remedies provided by law including penalties, interest, and equitable relief as the court deems just.

## THIRD CAUSE OF ACTION

### GENDER VIOLENCE

44. Paragraphs 1 through 23 are incorporated by reference into each paragraph in this cause of action.

45.    Plaintiffs allege gender violence under California Civil Code §52.4 and the FTCA. *See also* Cal. Pen. Code §243.4(a).

46.    "Any person who has been subjected to gender violence may bring a civil action for damages against any responsible party. The plaintiff may seek actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. A prevailing party may also be awarded attorney's fees and costs." Cal. Civ. Code §52.4(a).

47.    Gender violence "is a form of sex discrimination and means either of the following: (1) One or more acts that would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction. (2) A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction." *Id.* at §52.4(c).

48.    A violation of California Penal Code §243.4 meets the definition of Civil Code §52.4(c)(1) because it defines the elements of criminal sexual battery as follows: "Any person who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of sexual battery." Cal. Pen. Code §243.4(a).

49.    **Plaintiff Chaney alleges gender violence as follows:**

    a.    Against Defendant O'Connor individually as pleaded in ¶21(c).

    b.    Against Defendant Jones individually as pleaded in ¶21(d).

    c.    Against Defendant Smith individually as pleaded in ¶21(f).

d.      Against Defendants USA, BOP, and DOES 1 through 20 based on the doctrine of respondeat superior as pleaded in ¶¶19, 20, and 21(g)-(j). These defendants have waived sovereign immunity under the FTCA for this cause of action because it is based on assault/battery. 28 U.S.C. §2680(h).

50.     **Plaintiff Washington alleges gender violence as follows:**

a.      Against Defendant Kershaw individually as pleaded in ¶22(b).

b.      Against Defendant Smith individually as pleaded in ¶22(c).

c.      Against Defendant Espinosa individually as pleaded in ¶22(d).

d.      Against Defendants USA, BOP, and DOES 1 through 20 based on the doctrine of respondeat superior as pleaded in ¶¶19, 20, and 22(h). These defendants have waived sovereign immunity under the FTCA for this cause of action because it is based on assault/battery. 28 U.S.C. §2680(h).

51.     **Plaintiff Garcia alleges gender violence as follows:**

a.      Against Defendant Smith individually as pleaded in ¶23(b)-(f).

b.      Against Defendants USA, BOP, and DOES 1 through 20 based on the doctrine of respondeat superior as pleaded in ¶¶19, 20, and ¶23(g). These defendants have waived sovereign immunity under the FTCA for this cause of action because it is based on assault/battery. 28 U.S.C. §2680(h).

52.     Defendants acted with malice and oppression and reckless or callous disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages, as supported by the specific factual allegations in ¶1-23.

53.     Plaintiffs seek actual damages, compensatory damages, punitive damages, attorney fees and costs, as well as any other remedies provided by law including but not limited to penalties, interest, and equitable relief as the court deems just.

## FOURTH CAUSE OF ACTION

### CIVIL CONSPIRACY

COMPLAINT

54.    Paragraphs 1 through 53 are incorporated by reference into each paragraph in this cause of action.

55.    Plaintiffs Chaney, Washington, and Garcia allege civil conspiracy against all defendants based on California common law and the FTCA.

56.    "The elements of an action for civil conspiracy are (1) formation and operation of the conspiracy and (2) damage resulting to the plaintiff (3) from a wrongful act done in furtherance of the common design." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1062 (2006). A civil conspiracy claim is simply a mechanism for imposing vicarious liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in it perpetration; it is not itself a substantive basis for liability. *Favila v. Katten Muchin Rosenman LLP*, 188 Cal.App.4th 189, 206 (2010). Before liability can be imposed, therefore, a duty must be owed by the co-conspirator to the plaintiff as the doctrine of conspiracy does not impose liability on persons who owe no duty or who are otherwise immune from liability. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 520 (1994).

57.    As set forth in extensive detail in ¶¶19-20, the defendants in this case colluded to perpetrate a culture of sexual violence against the female inmates at FCI Dublin over many years and did so in a manner to prevent the outside world from discovering their misdeeds. The conspiracy started at the top with the warden and continued down the chain of command to permeate every aspect of life at FCI Dublin while Plaintiffs were incarcerated there.

58.    On information and belief, an agreement among and between the defendants existed with respect to the wrongful acts done in furtherance of their common design. The existence of collusion, cover-up, and conspiracy is evidenced from the extent, duration, and severity of the abuse the inmates suffered before those wrongs were discovered.

59.     As set forth in ¶20, the defendants preyed on a vulnerable population of women to whom they owed the highest duty of care. Inmates are wards of the state and exist at the sufferance and goodwill of the government while in custody and depend on the government and all of its agents and employees to ensure they are safe, and their basic needs are met. Defendants owed Plaintiffs a duty of care but breached that duty by engaging in a common plan or design to subject them to sex-based abuse, assault, harassment, and retaliation.

60.     Defendants' conduct, and all of it, satisfies the standard for wrongful acts because, as pleaded *inter alia* in the First, Second, and Third Causes of Action, Defendants committed both civil torts and criminal acts. Because assault and battery form the underlying wrongful torts upon which Plaintiffs' cause of action for civil conspiracy springs, this claim falls within the federal government's waiver of sovereign immunity with respect to "acts or omissions of investigative or law enforcement officers of the United States Government… arising… out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. §2680(h).

61.     As set forth in ¶19-23, Defendants acted with malice, oppression, and/or fraud with respect to the allegations in this complaint, entitling Plaintiffs to punitive damages.

62.     As set forth in ¶¶21, 22, and 23, Plaintiffs Chaney, Washington, and Garcia were harmed by Defendants' conduct and suffered and continue to suffer damages as a result, and satisfied the FTCA as pleaded in those paragraphs, respectively.

63.     Plaintiffs seek actual damages, compensatory damages, punitive damages, attorney fees and costs, as well as any other remedies provided by law including but not limited to penalties, interest, and equitable relief as the court deems just.

## FIFTH CAUSE OF ACTION

BATTERY

64.     Paragraphs 1 through 23 are incorporated by reference into each paragraph in this cause of action.

65.     This claim is brought under California common law.

66.     **Plaintiff Chaney alleges battery as follows**:

a.     Against Defendant O'Connor individually for intentionally causing harmful and offensive contact as pleaded in ¶21(c);

b.     Against Defendant Smith individually for intentionally causing harmful and offensive contact as pleaded in ¶21(f); and

c.     Against Defendants USA, BOP, and DOES 1 through 20 based on respondeat superior for creating allowing, and/or knowingly permitting a culture of abuse as pleaded in ¶¶19 and 20, and under the theory of ratification for ratifying O'Connor and Smith's misconduct at work by failing to act on complaints made against them for battery as pleaded in ¶¶21, 22, and 23. Defendants have waived sovereign immunity because this claim is based on battery. 28 U.S.C. §2680(h).

67.     **Plaintiff Washington alleges battery as follows:**

a.     Against Defendant Kershaw individually for intentionally causing harmful and offensive contact as stated in ¶22(b);

b.     Against Defendant Smith individually for intentionally causing harmful and offensive contact as stated in ¶22(d); and

c.     Against Defendants USA, BOP, and DOES 1 through 20 based on respondeat superior for creating allowing, and/or knowingly permitting a culture of abuse as pleaded in ¶¶19 and 20, and under the theory of ratification for ratifying Kershaw and Smith's misconduct at work by failing to act on complaints made against them for battery as pleaded in ¶¶21, 22, and 23. Defendants have

COMPLAINT

waived sovereign immunity because this claim is based on battery. 28 U.S.C. §2680(h).

68. **Plaintiff Garcia alleges battery as follows:**

a. Against Defendant Smith individually for intentionally causing harmful and offensive contact by repeatedly and forcibly touching, fondling, and exposing her body and breasts as pleaded in ¶23(c); throwing her against the door, pulling up her shirt and bra, groping, and trying to suck on her breasts as pleaded in ¶23(d); and by sliding his bare penis between her legs as pleaded in ¶23(e).

b. Against Defendants USA, BOP, and DOES 1 through 20 based on the doctrine of respondeat superior for creating, allowing, and/or knowingly permitting a culture of abuse as pleaded in ¶¶19 and 20, and under the theory of ratification for ratifying Smith's misconduct at work by failing to act on complaints against him for sexual harassment and abuse as pleaded in ¶¶21, 22, and 23. Defendants have waived sovereign immunity because this claim is based on battery. 28 U.S.C. §2680(h).

69. Defendants acted with malice and oppression and reckless or callous disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages, as supported by the specific factual allegations in ¶1-23.

70. Plaintiffs seek actual damages, compensatory damages, punitive damages, attorney fees and costs, as well as any other remedies provided by law including penalties, interest, and equitable relief as the court deems just.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE

71. Paragraphs 1 through 23 are incorporated by reference into each paragraph in this cause of action.

72. Plaintiffs allege negligence under California common law and the FTCA as set forth below.

73.     Jailers owe a duty of care to prisoners under state tort law. California case law holds that there is a special relationship between jailer and prisoner, imposing on the former a duty of care to the latter. *Schrubb v. California* 22-cv-00266-EJD (N.D. Cal. May 31, 2022) at \*6-7 (citing *Lawson v. Superior Court*, 168 Cal.App.4th 231, 250 (2010).)

74.     Defendants O'Connor, Smith, and Kershaw owed special and heightened duties of care to Plaintiffs as their jailers, and those duties required them to protect Plaintiffs against reasonably foreseeable harm including sexual abuse. Alternatively, Defendants owed a general duty of care with respect to the Plaintiffs.

75.     Defendants breached their duties of care to Plaintiff, and such breaches caused Plaintiffs harm.

76.     **Plaintiff Chaney alleges negligence as follows:**

a.     Against Defendant O'Connor individually for breaching his duty of care to Plaintiff by repeatedly subjecting her to sexual acts as pleaded in ¶21(c), and against Defendant Smith individually for breaching his duty of care to Plaintiff by repeatedly subjecting her to sexual acts as pleaded in ¶21(f). Reasonably prudent prison guards would not have engaged in that conduct.

i.     By repeatedly subjecting Plaintiff to sexual acts, Defendants proximately caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

ii.     Defendants' conduct lacked any penological justification, and their actions were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in sexually abusing and/or ratifying the sexual abuse of Plaintiff.

b.      Against the United States, BOP, and FCI Dublin under the FTCA based on the acts and/or omissions of O'Connor and Smith acting in their capacities as employees of BOP and within the scope of said employment, with the permission and consent and ratification of Defendants United States, BOP, and FCI Dublin.

i.      Defendants O'Connor and Smith owed custodial duties, as well as mandatory statutory obligations under PREA and BOP policies, to protect Plaintiff as an inmate incarcerated by the United States from foreseeable harm including harm from sexual abuse. In the alternative, they owed a general duty of care to Plaintiff.

ii.      Defendants O'Connor and Smith's sexual abuse of Plaintiff was reasonably foreseeable to decision-makers at FCI Dublin, BOP and the United States because their conduct made plain they were abusing her and based on prior knowledge of prior complaints.

iii.      Defendants United States, BOP, and FCI Dublin failed to supervise and operate FCI Dublin in a manner that would have prevented the ongoing sexual abuse of Plaintiff. These defendants did not take reasonable, available measures to abate the risk of harm to Plaintiff and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding prison operations including adequately monitoring officer conduct and responding to complaints of prior misconduct.

iv.      Defendants O'Connor and Smith's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of Defendants United States, BOP, and FCI Dublin.

c.      Defendants caused Plaintiff physical violation, injuries to personal dignity, prior physical injury, past and future mental pain and suffering, emotional distress, and other injuries.

d.     Defendants acted with malice and oppression and reckless or callous disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages, as supported by the specific factual allegations in ¶1-23.

e.     Plaintiff seeks nominal damages resulting from the repeated violations of her personal dignity and from physical injury; non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and punitive damages.

77.     **Plaintiff Washington alleges negligence as follows:**

a.     Against Defendant Kershaw individually for breaching his duty of care to Plaintiff by repeatedly subjecting her to sexual acts as pleaded in ¶22(b). And against Defendant Smith individually for breaching his duty of care to Plaintiff by repeatedly subjecting her to sexual acts as pleaded in ¶22(d). A reasonably prudent prison guard would not have engaged in that conduct.

i.     Defendants' conduct lacked any penological justification, and their actions were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in sexually abusing and/or ratifying the sexual abuse of Plaintiff.

ii.     By repeatedly subjecting Plaintiff to sexual acts, Defendants proximately caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

b.     Against the United States, BOP, and FCI Dublin under the FTCA based on the acts and/or omissions of Kershaw and Smith acting in their capacities as employees of BOP and within the scope of said employment, with the permission and consent and ratification of Defendants United States, BOP, and FCI Dublin.

i.      Defendants Kershaw and Smith owed custodial duties, as well as mandatory statutory obligations under PREA and BOP policies, to protect Plaintiff as an inmate incarcerated by the United States from foreseeable harm including harm from sexual abuse. In the alternative, they owed a general duty of care to Plaintiff.

ii.      Defendants Kershaw and Smith's sexual abuse of Plaintiff was reasonably foreseeable to decision-makers at FCI Dublin, BOP and the United States because their conduct made plain they were abusing her and based on prior knowledge of prior complaints.

iii.      Defendants United States, BOP, and FCI Dublin failed to supervise and operate FCI Dublin in a manner that would have prevented the ongoing sexual abuse of Plaintiff. These defendants did not take reasonable, available measures to abate the risk of harm to Plaintiff and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding prison operations including adequately monitoring officer conduct and responding to complaints of prior misconduct.

iv.      Defendants Kershaw and Smith's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of Defendants United States, BOP, and FCI Dublin.

c.      Defendants caused Plaintiff physical violation, injuries to personal dignity, prior physical injury, past and future mental pain and suffering, emotional distress, and other injuries.

d.      Defendants acted with malice and oppression and reckless or callous disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages, as supported by the specific factual allegations in ¶1-23.

e.      Plaintiff seeks nominal damages resulting from the repeated violations of her personal dignity and from physical injury; non-economic damages

consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and punitive damages.

78.   **Plaintiff Garcia alleges negligence as follows:**

a.   Against Defendant Smith individually for breaching his duty of care to Plaintiff by repeatedly subjecting her to sexual acts as pleaded in ¶23(c), (d), and (e). A reasonably prudent prison guard would not have engaged in that conduct.

i.   Defendant's conduct lacked any penological justification, and their actions were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in sexually abusing and/or ratifying the sexual abuse of Plaintiff.

ii.   By repeatedly subjecting Plaintiff to sexual acts, Defendant proximately caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

b.   Against the United States, BOP, and FCI Dublin under the FTCA based on the acts and/or omissions of Kershaw and Smith acting in their capacities as employees of BOP and within the scope of said employment, with the permission and consent and ratification of Defendants United States, BOP, and FCI Dublin.

i.   Defendant Smith owed custodial duties, as well as mandatory statutory obligations under PREA and BOP policies, to protect Plaintiff as an inmate incarcerated by the United States from foreseeable harm including harm from sexual abuse. In the alternative, he owed a general duty of care to Plaintiff.

ii.   Defendant Smith's sexual abuse of Plaintiff was reasonably foreseeable to decision-makers at FCI Dublin, BOP and the United

COMPLAINT

States because his conduct made plain he was abusing her and based on prior knowledge of prior complaints made against him and known to Defendants.

        iii.    Defendants United States, BOP, and FCI Dublin failed to supervise and operate FCI Dublin in a manner that would have prevented the ongoing sexual abuse of Plaintiff. These defendants did not take reasonable, available measures to abate the risk of harm to Plaintiff and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding prison operations including adequately monitoring officer conduct and responding to complaints of prior misconduct.

        iv.    Defendant Smith's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of Defendants United States, BOP, and FCI Dublin.

        c.    Defendants acted with malice and oppression, in reckless or callous disregard of Plaintiff's rights, making her entitled to punitive damages.

        d.    Plaintiff seeks nominal damages resulting from the repeated violations of her personal dignity and from physical injury; non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and punitive damages.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1.    Nominal damages in an amount to be determined at trial;

2.    Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury,

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1.  Nominal damages in an amount to be determined at trial;

2.  Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

3.  Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights;

4.  An award to Plaintiff of reasonable costs and fees; and

5.  Such other and further relief as the Court may deem fit and proper.

Dated: June 16, 2023

Respectfully submitted,

NICHOLAS J.P. WAGNER
Counsel for Plaintiffs

COMPLAINT

# EXHIBIT A

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| FEDERAL BUREAU OF PRISONS <br> ~~FCI DUBLIN~~  320 First Street, NW <br> Washington, DC 20534 | Claimant Linda Chaney <br> 3547 S. Golden State Blvd., Fresno CA 93725 <br> Represented by Nicholas Wagner/The Wagner Law Group <br> 1111 E Herndon Ave. #317, Fresno CA 93720 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 01/04/1975 | | Sept. 2018 to | Dec. 2021 | AM & PM |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

SEE ATTACHMENT "A" TO THIS CLAIM FORM

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

NONE

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

NONE

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

SEE ATTACHMENT "A" TO THIS CLAIM FORM

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| Marie Washington | 3355 Grove Street, Unit 135, Lemon Grove CA 91945 |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| NONE | $5.5 million | NONE | $5.5 million |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| [signature] Wagner - Attorney for claimants | (559) 449-1800 | 06/20/2022 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.). |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No

NONE

| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☐ No | 17. If deductible, state amount. |
|---|---|
| NONE | 0.00 |

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

NONE

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

NONE

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the incident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

ATTACHMENT "A"
TO FEDERAL GOVERNMENT TORT CLAIM

Claimant:        Linda Chaney

Filed against:   Federal Bureau of Prisons (BOP)

Question 8:      BASIS OF CLAIM

Claimant suffered sexual harassment and sex-based discrimination during her incarceration at FCI Dublin beginning on September 7, 2019 through her release on or about December 2, 2021.

While Claimant was incarcerated, she worked in the food services department. When she was placed there, she was told that "everyone minds their own business here" and that she was expected to keep watch for the officers/foremen/BOP employees who were stationed there. This basically entailed turning a blind eye while male BOP employees took female inmates to the refrigerators in the back, and warning them if other staff were approaching the area. Claimant saw several instances where male BOP employees took female inmates into the back and the lights were turned off. Claimant was warned that her spot in the food services department was dependent on her "keeping an eye out" and if she didn't, then her position was not secure.

Foreman O'Connor, a male BOP employee who was assigned to the food services department, repeatedly assaulted Claimant when she went to return utensils to their correct location. O'Connor would "rub his dick" up against Claimant's butt. The first time this happened, she said, "What are you doing?" and O'Connor said, "Oh, my bad!" The behavior didn't stop, however, and O'Connor continued to rub himself against Claimant. She was scared to report the assaults because she did not want to be sent to the Special Housing Unit, which would have been the retaliation if she had reported his conduct.

Foreman Jones, another male BOP employee assigned to food services, would verbally abuse the inmates and was reported for his behavior by at least two inmates—last names Wilson and McDonald. Jones took Claimant aside and made her repeat that she was "on his side" because Wilson and McDonald had reported him. Claimant told him "yes" because she was intimidated and afraid of what Jones would do if she said no and reported his behavior as well. Jones had 'special relationships' with more than one female inmate.

ATTACHMENT "A"
TO FEDERAL GOVERNMENT TORT CLAIM

Claimant and her cellmate Marie Washington were harassed by a guard named Officer Smith who worked on their housing unit. He would come to Claimant's room, and say he was the guard for tonight, and tell them 'they'd better be naked' when he did his rounds so he could watch and look at them. Officer Smith repeatedly said that he had "friends in high places" and was "important." He would walk into their room and demand they have sex with each other. Officer Smith's conduct was unwanted and persistent, and Claimant felt threatened and believed he was telling her to 'get naked or else.' Claimant was afraid to speak up because Officer Smith told her and her roommate, Ms. Washington, that he would kill anyone who told on him.

Claimant was contacted by SIS several times to make statements regarding reports of inappropriate behavior by male BOP employees against the female inmates. Claimant was too afraid and scared to tell SIS what she had actually seen and experienced. Instead, she told SIS that she hadn't seen anything because she did not want to be retaliated against.

QUESTION 10:     STATE THE NATURE AND EXTENT OF EACH INJURY WHICH FORMS THE BASIS OF THE CLAIM

The conduct described in the answer to Question 8 injured Claimant by causing her to suffer non-economic damages including emotional distress and pain and suffering. Since her release from FCI Dublin in February 2022, Claimant has suffered from anxiety, fear, sleeplessness, anger, and intrusive/invasive thoughts on a daily basis.

Claimant suffered statutory, common law, and constitutional rights violations caused by BOP's actions and failures to act. BOP had a duty to keep Claimant safe during the period of her incarceration, and failed to do so. BOP knew, or should have known, about the harassment Claimant was subjected to and failed to intervene and protect her from the conduct of DCI Dublin's prison guards. BOP had a non-delegable duty to act in Claimant's best interest given her status as an inmate under BOP's complete control.

Document ID: 910f7ab4dfb148f07713fd02d4bb5ed85070efec
Generated on: May 9, 2022
Signed On: https://thewagnerlawgroup.com/

## ACKNOWLEDGMENT OF REPRESENTATION - Linda A Chaney

TO: _____

Pursuant to Section 2695.2(c) of the California Code of Regulations, Title I0, chapter 5; I do hereby authorize the **WAGNER LAW GROUP P.C.** to handle my case.

This authorization shall be valid until said case is resolved, unless this authorization is revoked in writing by the undersigned. Any and all prior authorizations are hereby revoked by the undersigned as of the date of this authorization. A photostatic copy of the document shall be valid as the original.

x *Linda A Chaney*

Signed By Linda A Chaney
Signed On: May 9, 2022



## Signature Certificate



Document name: ACKNOWLEDGMENT OF REPRESENTATION - Linda A Chaney

🔒 Unique Document ID: 910F7AB4DFB148F07713FD02D4BB5ED85070EFEC



Linda A Chaney
Party ID: da8828be-23aa-4af0-b539-1c595794a04b
IP Address: 174.208.99.63

Digital Signature:



| Multi-Factor **Digital Fingerprint** Checksum | 0cac9e8185caa0609e4e669b8d3e3bce | |
|---|---|---|

| Timestamp | Audit |
|---|---|
| May 9, 2022 11:53 am PDT | ACKNOWLEDGMENT OF REPRESENTATION - Linda A Chaney Uploaded by Rhonda Beckham - rbeckham@wagnerjones.com IP 73.90.81.230 |
| May 9, 2022 11:53 am PDT | Document signed by Linda A Chaney - pbe444@gmail.com IP 174.208.99.63 |
| May 9, 2022 11:53 am PDT | Rhonda Beckham - rbeckham@wagnerjones.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| May 9, 2022 11:53 am PDT | Jody Jones - jody@thewagnerlawgroup.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| May 9, 2022 11:53 am PDT | Jake Benjamin - jbenjamin@wagnerjones.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| May 9, 2022 11:53 am PDT | Butch Wagner - bwagner@wagnerjones.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| May 9, 2022 11:53 am PDT | Aaron Benjamin - abenjamin@wagnerjones.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| May 9, 2022 11:53 am PDT | The document has been signed by all parties and is now closed. |



This audit trail report provides a detailed record of the online activity and events recorded for this contract.

Page 2 of 2



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_Western Regional Office_
_7338 Shoreline Drive_
_Stockton, California 95219_

SEP   1 2022

Wagner Law Group
1111East Herndon Avenue, Suite 317
Fresno, CA 93720

RE:    Linda Chaney, Register Number 10509-097
       Administrative Claim No. TRT-WXR-2022-06518
       Received: June 27, 2022

Dear Sir of Madam:

This is to acknowledge the Claim for Damage, Injury or Death submitted or forwarded to this office under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq. In this claim, you seek compensation on behalf of the above referenced individual for personal injury as a result of events from September 2018 to December 2021 at the Federal Correctional Institution, Dublin, California.

In accordance with the applicable provisions of the statute, this agency has up to six months within which to make a final determination of your administrative claim for damages. This time frame began on the date that your claim was received for filing and processing as noted above.

It is your responsibility to advise this office of any change in your address.   You are also requested to refer to the assigned claim number whenever corresponding with this office about your submission.

Sincerely,

DENNIS M. WONG
WESTERN REGIONAL COUNSEL

Dominic Ayotte
Deputy Regional Counsel/CLC Supervisor

DA/jv

# EXHIBIT B

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Federal Bureau of Prisons<br>~~FCI Dublin~~ 320 First St., NW Washington, DC 20534 | Claimant Marie Washington<br>3355 Grove Street, Unit 135, Lemon Grove CA 91945<br>Represented by Nicholas Wagner/The Wagner Law Group<br>1111 E Herndon Ave. #317, Fresno CA 93720 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 08/27/1986 | Single | 9/01/2020 to     Feb. 2022 | AM & PM |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

SEE ATTACHMENT "A" TO THIS CLAIM FORM

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

NONE

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

NONE

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

SEE ATTACHMENT "A" TO THIS CLAIM FORM

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| Linda Chaney | 3547 S Golden State Blvd., Fresno CA 93725 |
| Fabiola (last name unknown) | Claimant's cellmate in FCI Dublin's Covid ward; address unknown |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| None | $5.5 million | NONE | $5.5 million |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| _[signature]_ - Attorney for claimants | (559) 449-1800 | 06/20/2022 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☐ No

NONE

| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes  ☐ No | 17. If deductible, state amount. |
|---|---|
| NONE | 0.00 |

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)

NONE

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☐ No

NONE

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14.  Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT.  THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A.  *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute this form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is <u>solely</u> for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) BACK

ATTACHMENT "A"
TO FEDERAL GOVERNMENT TORT CLAIM

Claimant:      Marie Washington

Filed against:   Federal Bureau of Prisons (BOP)

Question 8:      BASIS OF CLAIM

Claimant suffered continued sexual harassment during her two years of incarceration at FCI Dublin, first while she was in the Covid ward for six weeks to quarantine and then throughout the rest of her time in the regular housing unit. The sexual harassment was committed by several guards.

Upon admission to FCI Dublin in September 2020, Claimant was put in the Covid ward for quarantine where she stayed for approximately six (6) weeks during which she was only allowed out of her cell once every 72-hours to shower. While in the Covid ward, a guard named Officer Kershaw targeted Claimant by asking to see her vagina; shining his flashlight through her cell window to try and see her naked; come to her door while she was dressing; and telling her to "do stuff" with her cell mate so he could watch. Claimant's cellmate at the time was a woman named Fabiola (last name unknown). Claimant and Fabiola were new arrivals at FCI Dublin who were scared and afraid. They complied with Officer Kershaw's demands because they had no choice but to comply or suffer retaliation. As a consequence of this coercion, Claimant engaged in sexual acts with her cell mate while Officer Kershaw watched them. Officer Kershaw also told Claimant that if he could enter her cell, he would "fuck the shit out of you." Officer Kershaw's conduct was unwanted, persistent, and threatening.

After six weeks in the Covid ward, Claimant transferred to the regular housing unit. While there, Claimant and her cellmate Linda Chaney were sexually harassed by a guard named Officer Smith. He would come to her room where she and her roommate were, and tell them that he was the guard for tonight, and tell them 'they'd better be naked' when he did his rounds so he could watch and look at them. Officer Smith repeatedly said that he had "friends in high places" and was "important." Officer Smith's conduct was unwanted and persistent, and threatened Claimant to 'get naked or else.'

While in the regular housing unit, Claimant was targeted by a third guard named Officer Espinosa. In December 2021 or early January 2022, Officer Espinosa burst open Claimant's door just after she had taken a shower and stared at her naked body. He stared at her for "a while" before finally leaving. Claimant could smell alcohol on his breath when this happened. Officer Espinosa knew Claimant was

ATTACHMENT "A"
TO FEDERAL GOVERNMENT TORT CLAIM

naked before he opened her door because her window was covered with a "wickie", which is a privacy screen given to female inmates which they use to cover their windows while they are getting dressed. Claimant put up the "wickie" so she could change after showering with the expectation that she could do so in private, away from guards, and in peace and quiet.

Officer Smith and Officer Espinosa further targeted Claimant by disrupting her sleep when they worked night shifts. Normally, the night guards check on inmates every 30 minutes by shining their flashlights in the inmates' cell windows. Officers Smith and Espinosa, however, came to her window every 5 to 10 minutes at night. This conduct was extremely disruptive to Claimant's sleep, and was also a continuation of the sexual harassment treatment she received from these guards during daylight.

QUESTION 10:     STATE THE NATURE AND EXTENT OF EACH INJURY
                 WHICH FORMS THE BASIS OF THE CLAIM

The conduct described in the answer to Question 8 injured Claimant by causing her to suffer non-economic damages including emotional distress and pain and suffering. Since her release from FCI Dublin in February 2022, Claimant has suffered from anxiety, fear, sleeplessness, anger, and intrusive/invasive thoughts on a daily basis. Claimant was molested by her step-father for years when she was a child, and the sexual harassment she suffered at DCI Dublin exacerbated and brought to the surface that trauma.

Claimant suffered statutory, common law, and constitutional rights violations caused by BOP's actions and failures to act. BOP had a duty to keep Claimant safe during the period of her incarceration, and failed to do so. BOP knew, or should have known, about the harassment Claimant was subjected to and failed to intervene and protect her from the conduct of DCI Dublin's prison guards. BOP had a non-delegable duty to act in Claimant's best interest given her status as an inmate under BOP's complete control.

Document ID: 0c30e57e5059c1b8cb9145a098ae779bdca3cbad
Generated on: May 24, 2022
Signed On: https://thewagnerlawgroup.com/

## ACKNOWLEDGMENT OF REPRESENTATION - Marie Washington

TO: _____

Pursuant to Section 2695.2(c) of the California Code of Regulations, Title I0, chapter 5; I do hereby authorize the **WAGNER LAW GROUP P.C.** to handle my case.

This authorization shall be valid until said case is resolved, unless this authorization is revoked in writing by the undersigned. Any and all prior authorizations are hereby revoked by the undersigned as of the date of this authorization. A photostatic copy of the document shall be valid as the original.

Signed By Marie Washington
Signed On: May 24, 2022



# Signature Certificate

**Document name:** ACKNOWLEDGMENT OF REPRESENTATION - Marie Washington

🔒 Unique Document ID: 0C30E57E5059C1B8CB9145A098AE779BDCA3CBAD


LEGALLY SIGNED USING
**WP**Esignature
Build. Track. Sign Contracts.



Marie Washington
Party ID: a993a35e-e5cc-4264-9f12-0b15970dbb40
IP Address: 68.101.239.125

**Digital Signature:**



| Multi-Factor **Digital Fingerprint Checksum** | 84b07fbf4d0cebb37cff028ab691742c |
|---|---|

| Timestamp | Audit |
|---|---|
| May 24, 2022 7:15 pm PDT | ACKNOWLEDGMENT OF REPRESENTATION - Marie Washington Uploaded by Rhonda Beckham - rbeckham@wagnerjones.com IP 73.90.81.230 |
| May 24, 2022 7:15 pm PDT | Document signed by Marie Washington - maysmarie86@gmail.com IP 68.101.239.125 |
| May 24, 2022 7:15 pm PDT | Rhonda Beckham - rbeckham@wagnerjones.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| May 24, 2022 7:15 pm PDT | Jody Jones - jody@thewagnerlawgroup.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| May 24, 2022 7:15 pm PDT | Jake Benjamin - jbenjamin@wagnerjones.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| May 24, 2022 7:15 pm PDT | Butch Wagner - bwagner@wagnerjones.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| May 24, 2022 7:15 pm PDT | Aaron Benjamin - abenjamin@wagnerjones.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| May 24, 2022 7:15 pm PDT | The document has been signed by all parties and is now closed. |



This audit trail report provides a detailed record of the online activity and events recorded for this contract.

Page 2 of 2



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_____

Western Regional Office
7338 Shoreline Drive
Stockton, California 95219

SEP   8 2022

Wagner Law Group
1111 East Herndon Avenue, Suite 317
Fresno, CA 93720

Re:   Marie Mays (Washington), Reg. No. 71390-298
       Administrative Claim No. TRT-WXR-2022-06370

Dear Sir or Madam:

This is in response to correspondence received in this office on September 6, 2022, in which you have
provided the requested evidence of your authority to represent Marie Mays (Washington) in this matter.
This information will be added to our file.

Sincerely,

Dominic Ayotte
Deputy Regional Counsel

DA/jmv

# EXHIBIT C

| **CLAIM FOR DAMAGE, INJURY, OR DEATH** | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | **FORM APPROVED OMB NO. 1105-0008** |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| FEDERAL BUREAU OF PRISONS<br>320 FIRST STREET NW<br>WASHINGTON, DC 20534 | PEARL GARCIA (CLAIMANT)<br>2296 FREYA DR., SAN JOSE, CA 95148<br>REPRESENTED BY THE WAGNER LAW GROUP<br>1111 E HERNDON AVE #317, FRESNO, CA 93720 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY   ☒ CIVILIAN | 12/08/1989 | SINGLE | 10/2019 TO | 01/12/2022 | BOTH |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

SEE ATTACHMENT "A" TO THIS CLAIM FORM

| 9. | **PROPERTY DAMAGE** |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

NONE

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

| 10. | **PERSONAL INJURY/WRONGFUL DEATH** |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

SEE ATTACHMENT "A" TO THIS CLAIM FORM

| 11. | **WITNESSES** |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| Officer Smith | Contact information unknown. |

| 12. (See instructions on reverse). | **AMOUNT OF CLAIM** (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| | 5,500,000 | | 5,500,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *[signature] Wagner* | (559) 449-1800 | 10/14/2022 |

| **CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM** | **CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS** |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes  ☒ No

17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
 A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:*  The information requested is to be used in evaluating claims.
C. *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond*: Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) **BACK**

ATTACHMENT "A"
TO FEDERAL GOVERNMENT TORT CLAIM


Claimant:       Pearl Garcia

Filed against:  Federal Bureau of Prisons (BOP)


Question 8:     BASIS OF CLAIM

Claimant was incarcerated at Federal Correctional Institution Dublin (FCI Dublin) from October 2019 through January 12, 2022. Prior to being placed in FCI Dublin, claimant served six months in the minimum-security camp, situated on the same site as FCI Dublin, from about April-September 2019.


From the time claimant began serving time at FCI Dublin around October 2019, she was continually harassed and targeted by correctional officers working in her housing unit. The guard repeatedly made inappropriate, offensive, and unwanted comments, gestures, and physical contact to Claimant including:

- About Claimant's breasts, stating: "Those are huge, I'd like to handle those", "You going to show me those things?", "I would love to fuck you in those big titties" and "I want to see those boobs."
- At night, going into Claimant's room, waking her up, and jiggling her legs to get her attention while demanding, "Are you going to show me yet?"
- Physically assaulting Claimant to expose and touch her breasts;
- Threatening to "tear up" her room if she told anyone;
- Warning Claimant to keep her mouth shut, saying: "No one will believe you."


For example, in 2021, one night the officer entered her room. His shirt was unbuttoned and his chest was showing. He shook her leg to wake her up. Claimant jumped up out of bed and said, "What are you doing? Get out of here!" She tried to leave but he blocked the door with his hands and said, "You're going to show me those titties right now. Who is going to know? No one is going to believe you." Then he threw her against the door and said, "You're going to show me or I'm going to see them either way." He then pulled up her shirt and bra, exposing her chest. He said, "Damn, these things are nice." He touched her breasts, grabbing one of them, rubbing it, and trying to put it near his mouth. Claimant slapped him. He stopped, tossed her aside, and left the room.

ATTACHMENT "A"
TO FEDERAL GOVERNMENT TORT CLAIM

The officer had come into her room at night before this, but started coming into her room a lot more afterward. On one occasion, he came into her room at night and unbuttoned his pants. Claimant jumped out of bed, but the officer stood with his back to the door—with his pants undone and his groin exposed—so she couldn't leave. He intentionally blocked the exit. She told him to leave; he shook his head and said, "No one has to know about this. No one will know." Then he grabbed her, turned her around, pushed her against the door, and started sliding his penis between her legs. Claimant was crying and begging him to stop. He eventually left.

This type of conduct continued until Claimant was released. On information and belief, the officer's name was Officer Smith.

QUESTION 10:   STATE THE NATURE AND EXTENT OF EACH INJURY WHICH FORMS THE BASIS OF THE CLAIM

The conduct described in the answer to Question 8 injured Claimant by causing her to suffer non-economic damages including emotional distress and pain and suffering. Claimant has suffered from anxiety, fear, sleeplessness, anger, and intrusive/invasive thoughts on a daily basis.

Claimant suffered statutory, common law, and constitutional rights violations caused by BOP's actions and failures to act. BOP had a duty to keep Claimant safe during the period of her incarceration, and failed to do so. BOP knew, or should have known, about the harassment Claimant was subjected to and failed to intervene and protect her from the conduct of DCI Dublin's prison guards. BOP had a non-delegable duty to act in Claimant's best interest given her status as an inmate under BOP's complete control.

Document ID: 0d296a506176ed680545b6c4f49162dbb75d5d65
Generated on: July 11, 2022
Signed On: https://thewagnerlawgroup.com/

# ACKNOWLEDGMENT OF REPRESENTATION - Pearl Garcia

TO: ___Federal Bureau of Prisons__, 32 First Street, NW, Washington, DC 20534

Pursuant to Section 2695.2(c) of the California Code of Regulations, Title I0, chapter 5; I do hereby authorize the **WAGNER LAW GROUP P.C.** to handle my case.

This authorization shall be valid until said case is resolved, unless this authorization is revoked in writing by the undersigned. Any and all prior authorizations are hereby revoked by the undersigned as of the date of this authorization. A photostatic copy of the document shall be valid as the original.

Signed By Pearl Garcia
Signed On: July 11, 2022

# Signature Certificate

Document name: ACKNOWLEDGMENT OF REPRESENTATION - Pearl Garcia

🔒 Unique Document ID: 0D296A506176ED680545B6C4F49162DBB75D5D65





Pearl Garcia
Party ID: 60b4858f-a8c6-4c6a-ab87-545932234d9e
IP Address: 166.205.87.140

Digital Signature:

*Pearl Garcia*

Multi-Factor
**Digital Fingerprint
Checksum**          **9f068cf8c9274feb7b7375ce4f44396e**

| Timestamp | Audit |
|---|---|
| July 11, 2022 2:27 pm PDT | ACKNOWLEDGMENT OF REPRESENTATION - Pearl Garcia Uploaded by Rhonda Beckham - rbeckham@wagnerjones.com IP 73.90.81.230 |
| July 11, 2022 2:27 pm PDT | Document signed by Pearl Garcia - pearl.garciaa05@gmail.com IP 166.205.87.140 |
| July 11, 2022 2:27 pm PDT | Rhonda Beckham - rbeckham@wagnerjones.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| July 11, 2022 2:27 pm PDT | Jody Jones - jody@thewagnerlawgroup.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| July 11, 2022 2:27 pm PDT | Jake Benjamin - jbenjamin@wagnerjones.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| July 11, 2022 2:27 pm PDT | Butch Wagner - bwagner@wagnerjones.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| July 11, 2022 2:27 pm PDT | Aaron Benjamin - abenjamin@wagnerjones.com added by Rhonda Beckham - rbeckham@wagnerjones.com as a CC'd Recipient Ip: 73.90.81.230 |
| July 11, 2022 2:27 pm PDT | The document has been signed by all parties and is now closed. |



This audit trail report provides a detailed record of the online activity and events recorded for this contract.

Page 2 of 2



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_____

Western Regional Office
7338 Shoreline Drive
Stockton, California 95219

Wagner Law Group                                    NOV  7 2022
1111East Herndon Avenue, Suite 317
Fresno, CA 93720

RE:   Pearl Garcia, Register Number 68867-298
      Administrative Claim No. TRT-WXR-2023-00667
      Received: October 20, 2022

Dear Sir or Madam:

This is to acknowledge receipt of your Claim for Damage, Injury or Death (Standard Form 95) that was
submitted to or forwarded to this office under the provisions of the Federal Tort Claims Act (FTCA), 28
U.S.C. §§ 671, et seq. As the legal representative for the above referenced inmate, you seek
compensation in the amount of $5,500,000.00 for alleged personal injury as a result of events occurring
at the Federal Correctional Institution, Dublin, California.

In accordance with the applicable provisions of the statute, this agency has up to six months within
which to make a final determination of your administrative claim for damages. This time frame began
on the date that your claim was received for filing and processing as noted above.

It is your responsibility to advise this office of any change in your address. You are also requested to
refer to the assigned claim number whenever corresponding with this office about your submission.

Sincerely,

Dennis M. Wong
Regional Counsel

DMW/jmv